STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
RICHARD MC GRANTHAM, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Law Division (Criminal)

Decided January 26, 1979.

578

Mr. *Patrick D. Conaghan* for appellant (*Messrs. Conaghan & Conaghan,* attorneys).

Mr. *Michael D. Suarez,* Assistant Prosecutor, for respondent (*Mr. James T. O'Halloran,* Prosecutor of Hudson County, attorney).

MAURICE A. WALSH, JR., J. S. C. This is an appeal from a judgment of conviction entered in the Municipal Court of Secaucus against defendant Richard McGrantham. The complaint originally charged a violation of *N. J. S. A.* 2A:113–8; however, this was changed to a violation of *N. J. S. A.* 2A:170–29 when the Hudson County grand jury refused to return an indictment on the former charge. The present charge is premised on the allegation that defendant "did by speech threaten to Kill [sic] Elaine Smith."

This appeal is in the form of a trial *de novo* on the record. *R.* 3:23–8(a). The applicable exceptions to this procedure do not exist here. At this juncture, a brief summary of the evidence adduced at the municipal court trial is called for.

At the trial the complaining witness stated that she received a telephone call at the hospital in which she was being treated, it was from a person whose voice she immediately identified as defendant's. She testified that defendant stated that unless she and their son returned to him and continued to live with him as they had been for about seven years prior to the incident, he would kill her. Defendant was despondent and indicated that he "had nothing to live for" and that he did not fear imprisonment. The witness testified on cross-examination that during the conversation (which lasted almost half an hour) defendant stated that he loved her and said "[a]ll the things that an upset lover would say * * *."

The complaining witness further testified that on at least one other occasion defendant threatened and assaulted her.

The testimony of the assault was corroborated by the complaining witness' stepmother who had witnessed the assault. Additionally, this witness testified that she overheard several arguments during which defendant threatened to kill the complaining witness.

After the State presented its case defendant testified. He admitted making a phone call to the complaining witness on the date in question but denied ever threatening to kill her. He stated that the conversation concerned the complaining witness' use of his surname although they were not married, and the fact that he would be or had been considered liable for the costs of hospitalization. He admitted stating that he would "get even" with the complaining witness by obtaining possession of his car through the judicial process.

The trial judge believed the testimony of the complaining witness. He found the testimony of defendant to be less than credible and disbelieved the testimony regarding defendant's complaints about his liability. The judge found as a fact that during the telephone conversation in question defendant made the alleged threat. He therefore found defendant guilty. The sentence imposed was imprisonment for 90 days, suspended on the condition that defendant refrain from "bother[ing]" the complaining witness.

█ This court is in complete agreement with the factual findings made by the trial judge. The ability of the municipal judge to observe the witnesses and assess their credibility, especially where two witnesses give divergent and uncorroborated testimony, must be given due, though not controlling, weight. *State v. Johnson,* 42 *N. J.* 146 (1964). Additionally, defendant's admission that he would "get even" with the complainant supports this finding. Thus, this court finds that defendant did in fact threaten to kill the complaining witness during the telephone conversation.

█ However, in order to convict defendant this court must ascertain whether such a threat is proscribed by the

statute. It must be noted that in the record there is no indication, except for brief references by counsel, as to what particular subsection of *N. J. S. A.* 2A:170–29 defendant was convicted of violating. The statute proscribes several different acts, and the judgment of conviction or the complaint should have specified the applicable subsection. See *State v. D'Aloia,* 2 *N. J. Misc.* 1164, 146 *A.* 426 (C. P. 1924). Notwithstanding this defect, the court will attempt to determine what subsection, if any, defendant has violated, defendant having waived objection by this appeal. *R.* 3:23–8(c). *N. J. S. A.* 2A:170–29 provides:

### Offensive language; molesting or interfering with person

1. Any person who utters loud and offensive or profane or indecent language in any public street or other public place, public conveyance, or place to which the public is invited; or

2. Any person who in any place, public or private,

a. Addresses or makes audible and offensive remarks to or concerning any passing person; or

b. Obstructs, molests or interferes with any person lawfully therein; or

3. Any person who telephones another and addresses to such person any profane, lewd, lascivious, indecent or disgusting remarks; or

4. Any person who repeatedly telephones another for the purpose of annoying or molesting such person —

Is a disorderly person.

Any offense committed under paragraphs 3 or 4 of this section may be deemed to have taken place at either the place at which the telephone call was made or the place at which the telephone call was received.

The subsection addressed by counsel in argument concerning defendant's motion to dismiss the complaint is *N. J. S. A.* 2A:170–29(2)(b). This subsection proscribes the obstruction or molestation of or interference with any person lawfully in a public or private place. The question is whether a single telephonic threat constitutes a violation of this proscription.

No reported decision has extended the construction of this statute to include the act present in this case. However, the

verbs used by the Legislature were defined in *State v. Furino*, 85 *N. J. Super*. 345 (App. Div. 1964), as follows:

The three verbs are definite, clear and distinct, readily understood and employed in the every-day speech of the man on the street. Refined definition is unnecessary. "Obstruct" means to object or come in the way of; to hinder from action; to impede. "Molest" means to interfere with or meddle with unwarrantably. And "interfere" is defined as to enter into or take a part in the concern of others; to intermeddle, intervene. [at 348, citations omitted]

Although these definitions do not exclude passive, non-physical conduct, *State v. Manning*, 146 *N. J. Super*. 589 (App. Div. 1977) (refusing a request by a police officer to leave the officer and a suspect alone for investigatory purposes), this court does not believe that they include oral, telephonic threats to life.

The court believes so for several reasons. First, the obstruction, molestation or interference must have as its object, intended or not, an action, duty or legitimate concern which is actually affected by the conduct. This object must be in the nature of an action or endeavor, or must be the physical person. It cannot be an abstract right or duty; one cannot obstruct, molest or interfere with rights or duties, but only the exercise of those rights or performance of those duties. At the most, defendant arguably molested or interfered with the victim's right to be free from fear of bodily harm in the abstract. He did not prevent or hinder any action, performance or movement. There was no intervention in a physical act or impingement on physical security. This court does not believe that the Legislature intended that non-physical communicative conduct where the possibility of immediate action was not present was to be within the proscription of this subsection. An opposite conclusion would extend the statute beyond the fair meanings of its terms; this court cannot so extend this statute. *State v. Carbone*, 38 *N. J.* 19 (1962).

Second, the Legislature addressed itself to the type of conduct involved here, *i. e.*, telephonic "molestation," in sub-

section 4 of the statute. However, it limited criminal liability for telephonic harassment to situations involving repeated contact. The implication is that where the contact is not repeated the conduct is not criminal unless, of course, it goes beyond mere molestation and is prohibited by another statute. This implication is proper and apparent; it has the authority of law. *State v. DeMeo,* 20 *N. J.* 1 (1955).

Finally, the statute prohibits a person "in any public or private place" from obstructing, molesting or interfering with "any person lawfully therein." Clearly, it contemplates a face-to-face transaction and not one occurring through the means of extended communication. Otherwise, threats by letter, telegraph or recording would also be included in the proscription. This would violate the principle that penal statutes are subject to strict construction. *Neeld v. Giroux,* 24 *N. J.* 224 (1957). Thus, this subsection should not be extended to prohibit the conduct of the defendant in this case.

█ The question remains whether any subsection prohibits defendant's conduct. As to subsection 1, because that offense requires the prohibited words to be spoken loudly and to be of such a nature so as to threaten an immediate breach of the peace, *State v. Reed,* 56 *N. J.* 354 (1970), a conviction for a telephone threat cannot stand.

█ Additionally, subsection 2(a) is not applicable because that subsection refers to a person "who in any place" makes certain remarks to "any passing person."

█ Subsection 4 of the statute is equally as inapplicable. As stated above, this subsection prohibits the *repeated* making of molesting or annoying phone calls. Only one call was made in this case.

█ The final subsection which may be applicable is subsection 3. This subsection prohibits the making of "profane, lewd, lascivious, indecent or disgusting remarks" to another. It is apparent that the use of these words was not intended to include all offensive language; unlike subsection 1, which speaks of "offensive or profane or indecent language," this

subsection is limited to the remarks quoted above. The language prohibited as lewd and lascivious is properly that which is descriptive of irregular or abnormal indulgence in or preoccupation with lust. See *State v. Baldino,* 11 *N. J. Super.* 158 (App. Div. 1951). Profane or indecent language is language associated with obscenity or epithets or words of personal abuse. *Karp v. Collins,* 310 *F. Supp.* 627 (D. *N. J.* 1970), vacated 401 *U. S.* 930, 91 *S. Ct.* 933, 28 *L. Ed.* 2d 210 (1971) (referring to subsection 1 of *N. J. S. A.* 2A:170-29). Finally, "disgusting" is defined as "acutely repugnant; loathsome; repellent." *The American Heritage Dictionary of the English Language,* 378 (1973).

With these definitions in mind, it becomes apparent that the thrust of this prohibition is directed towards language which is limited by its use in communicating ideas of a perverse or aberrant nature. This subsection is what the common person would consider the "obscene phone call" statute. So understood, it would not prohibit a threatening phone call unless the threatened action were of such an abnormal or perverse character that the intended result was more than simple fear or apprehension of danger.

Because of the foregoing the court finds that defendant's conduct was not proscribed by *N. J. S. A.* 2A:170-29. This is not to say that his actions are approved of by the court. On the contrary, the court feels that the making of such threats represents immature, irrational and anti-social conduct. Such behavior is usually and properly punishable under *N. J. S. A.* 2A:113-8, the violation of which was alleged in the original complaint; however, the grand jury did not find such a violation and this court will not find the defendant guilty of violating a statute not encompassing his conduct. Accordingly, this court finds defendant not guilty of violating *N. J. S. A.* 2A:179-29 in that the State has not carried its required burden of proof beyond a reasonable doubt.